IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Heath Ford Baldwin, )
 )
      Plaintiff, )
 )
  -vs- )   Civil Action No. 13-203
 )
CAROLYN W. COLVIN,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
 )
      Defendant. )

AMBROSE, Senior District Judge

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Plaintiff has filed a Motion for Summary Judgment relating to the denial of his claim for Supplemental Security Income and Disability Insurance Benefits (Docket No 8). Plaintiff contends that the denial is not supported by substantial evidence of record and is contrary to law. The Defendant Commissioner of Social Security has filed a Cross Motion for Summary Judgment (Docket No. 10), urging that the denial be affirmed. After careful consideration of the parties' submissions, and based upon the reasons set forth in my Opinion, the Plaintiff's Motion for Summary Judgment (Docket No. 8) is denied and the Defendant's Motion for Summary Judgment (Docket No. 10) is granted.

### BACKGROUND

Plaintiff Heath Ford Baldwin ("Baldwin") protectively-filed for SSI benefits on November 18, 2009 and for DIB on May 14, 2010, claiming a disability since January 10, 2003, due to depression, anxiety and bipolar disorder. (R. 20). The Administrative Law Judge held a hearing

---

[1] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.

1

on May 11, 2011.  Baldwin testified, as did his wife, and a vocational expert, William H. Reed. Following the hearing, the ALJ issued a decision finding that Baldwin was not disabled at the fifth step of the five step sequential analysis. (R. 24-28).  The Appeals Council denied Baldwin's request for review and Baldwin filed this appeal.

With respect to his claim for DIB, Baldwin's earning records demonstrate that he had sufficient coverage to remain insured through September 30, 2008. (R. 20).  Consequently, he must prove that he was disabled on or before that date in order to be entitled to a period of disability and disability insurance benefits. See 42 U.S.C. § 423(a)(1)(A) & (D); 20 C.F.R. § 404.130.  There is no corollary requirement for the payment of SSI benefits, which are paid prospectively only. See 20 C.F.R. § 416.501.

At the time of his amended disability onset date, July 18, 2008, Baldwin was only 30 years old, which qualifies him as a "younger individual." (R. 36-37). See 20 C.F.R. §§ 404.563(c), 416.963(c) (stating that "[i]f you are a younger person (under the age of 50), we generally do not consider that your age will seriously affect your ability to adjust to other work."). He has an 11th grade education. He has prior work experience as a forklift operator and as a fabricator / laborer in a steel factory. (R. 192).  He has also worked as a cashier and stock person, as well as a dismantler. (R. 38, 210).

Baldwin has treated with Dr. Mikhail Vassilenko over the years. Dr. Vassilenko prescribed Baldwin Risperdal, Celexa and doxepin for treatment of his bipolar condition, depression and difficulty sleeping.  Dr. Vassilenko completed a Mental Residual Functional Capacity Assessment of Baldwin dated March 18, 2011. (R. 402-407).  With respect to the category of "understanding and memory," Vassilenko noted that Baldwin's ability to understand and remember very short and simple instructions was "not significantly limited." However, he noted that Baldwin's ability to understand and remember detailed instructions was "moderately limited" and his ability to remember locations and work like procedures was "markedly limited."

(R. 402). In terms of "sustained concentration and persistence" Vassilenko characterized Baldwin as "moderately limited" in his ability to "carry out very short and simple instructions" and his "ability to make simple work related decisions" and "markedly limited" in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 402-03). As to "social interactions," Vassilenko noted that Baldwin was "markedly limited" in his ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 403). In contrast, he described Baldwin as only "moderately limited" in his ability to ask simple questions or request assistance, and "not significantly limited" in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 403). With respect to "adaptation," Vassilenko characterized Baldwin as "moderately limited" in his ability to be aware of normal hazards and take appropriate precautions and his ability to travel in unfamiliar places or use public transportation and "markedly limited" in his ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others. (R. 403).

Vassilenko said that Baldwin's symptoms were severe enough so as to "constantly" interfere with the attention and concentration needed to perform even simple work tasks. (R. 403). He noted Baldwin's then-current GAF at 50 and his highest GAF in the past year at 58. (R. 404). He described Baldwin as having a dysthymic mood and being emotionally unstable. (R. 404). He commented that Baldwin's prognosis was "guarded." (R. 404). In terms of his

3

"signs and symptoms," Vassilenko recorded: decreased energy, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood or affect, bipolar syndrome, emotional lability, flight ideas, easy distractibility and sleep disturbances. (R. 405). He opined that Baldwin's activities of daily living were moderately restricted; that he had moderate difficulties in maintaining social functioning, that he had marked difficulties in maintaining concentration, persistence and pace. (R. 406). He indicated that Baldwin's impairments would cause him to be absent from work more than four days per month. (R. 407).

A state agency psychologist, Manella Link, Ph.D., reviewed Baldwin's records, though the review occurred before Dr. Vassilenko issued his report. Dr. Link's report is dated February 25, 2010. (R. 385-400). In contrast with Dr. Vassilenko, Dr. Link did not find Baldwin "significantly limited" with respect to any of the "understanding and memory" criteria. (R. 385). In terms of "sustained concentration and persistence," Dr. Link's findings again differed from those of Dr. Vassilenko. Specifically, Dr. Link concluded that Baldwin was not "markedly limited" in any abilities in this category. Indeed, Dr. Link characterized Baldwin as "not significantly limited" in terms of the ability to carry out very short and simple instructions; the ability to carry out detailed instructions; the ability to sustain an ordinary routine without special supervision and the ability to make simple work-related decisions. (R. 385). Additionally, Dr. Link found "no evidence" of limitation regarding Baldwin's ability to work in coordination with or proximity to others without being distracted by them. Dr. Link described Baldwin as having "moderate limitations" only insofar as his ability to maintain attention and concentration for extended periods, his ability to perform activities within a schedule, his ability to maintain regular attendance and be punctual within customary tolerances, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 385-86). In evaluating Baldwin's "social interactions" Dr. Link continued to disagree with Dr.

4

Vassilenko, finding that Baldwin showed no evidence of limitations in his ability to interact appropriately with the general public or in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 386). Dr. Link found Baldwin "not significantly limited" with respect to his ability to ask simple questions or request assistance and only "moderately limited" in terms of his ability to accept instructions and respond appropriately to criticism from supervisors and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 386). With respect to "adaptation," Dr. Link noted that Baldwin showed no evidence of limitation in his ability to be aware of normal hazards and take appropriate precautions, and no significant limitations in his ability to travel in unfamiliar places or use public transportation. Dr. Link did, however, find that Baldwin had moderate limitations in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. 386). Dr. Link opined that Baldwin was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. 387).

As referenced above, Baldwin testified during the hearing before the ALJ. He noted that he had a drivers' license and did drive. (R. 39). He reported seeing Dr. Vassilenko approximately once a month or every two months. (R. 40). He stated that he was compliant with his medications. (R. 40). He described suffering from panic attacks once a month lasting about one hour in duration. (R. 40). Baldwin stated that he does go out shopping and running errands but that he often forgets what he is supposed to accomplish unless he is given a written list. (R. 41). He denied having any trouble with authority figures. (R. 41). He reported difficulty sleeping. (R. 44). Baldwin's wife also testified. She too reported that he struggled to recall tasks, absent written instructions. She also commented on his difficulty with sleep and his depression. (R. 47-49). Baldwin's wife also noted that Baldwin chewed on his knuckles when he was nervous. (R. 50).

5

At the conclusion of the hearing, the ALJ engaged in a discussion with a vocational expert. Dr. Reed defined Baldwin's prior work experience as medium, unskilled and heavy, semi-skilled, in terms of exertional and skill level. (R. 51). In response to a hypothetical question, Dr. Reed responded that an individual with an 11th grade education and Baldwin's work experience, who had no exertional limitations, but who was limited to simple, repetitive tasks involving routine work processes in settings not involving high stress and who had to avoid any jobs that would require the operation of dangerous machines or motor vehicles, would be able to find work in the medium unskilled category of janitors and cleaners, dishwashers and stock markers. (R. 51-52). When further questioned, the Vocational Expert qualified his answer, stating that if the individual was off task approximately 15% of the time or was unable to report to work on a random basis three times a month, he / she would not be able to perform the jobs identified above. (R. 53).

## LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by

substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he/she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts

to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B. WHETHER THE ALJ ERRED AS A MATTER OF LAW AND ABUSED HIS DISCRETION IN REACHING CONCLUSIONS REGARDING BALDWIN'S RESWIDUAL FUNCTIONAL CAPACITY**

Baldwin argues that the ALJ erred as a matter of law and abused his discretion in reaching conclusions regarding his residual functional capacity because he afforded more weight to the opinions offered by Manella Link, Ph.D., a State agency psychological consultant, than to the opinions of Dr. Mikhail Vassilenko, M.D., Baldwin's treating psychiatrist. The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physician are entitled to substantial and, at times, even controlling weight. 20 C.F.R. §§ 404.927, 416.927(c)(1). To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. *See Fragnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ looks at a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.927, 416.927(c)(1). As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id*. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the

record.

*Becker v.Comm'r of Social Security Admin.*, No.10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he / she "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009). Further, it must be noted that, "[s]tate agent opinions merit significant consideration… ." *Chandler v. Comm'r of Social Security*, 667 F.3d 356, 361 (3d Cir. 2012), citing SSR 96-6p ("Because State agency medical and psychological consultants … are experts in the Social Security disability programs, … 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] … to consider their findings of fact about the nature and severity of an individual's impairment(s)").

Here, the ALJ gave "little weight to the opinion of the claimant's treating psychiatrist, Dr. Mikhail Vassilenko, MD." (R. 25). The ALJ found that Vassilenko's opinion was not supported by his own findings on mental status examinations. Specifically, although Vassilenko "opined that the claimant has marked limitations in social interaction, adaptation, understanding and memory, and sustained concentration and persistence," the ALJ reasoned that the "mental status examinations reveal no disturbance of thought process, behavior, attention, or communication." (R. 25) The record does substantially support the ALJ's conclusion that the mental status examinations did not reveal any disturbance of thought process, behavior, attention or communication. For instance, the records generally indicate "unremarkable" findings with respect to "speech," "thought organization," "orientation," "impulse control," and "insight/judgment" in terms of Baldwin's examinations. See (R. 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 421, 423, 424, 425, 426, 427, 428, 429, 430, 433, 434, 435, 436, 437, 438, 439, 440, 442, 443). Further, although Baldwin did, in fact, display labile affect on several occasions, his affect was more frequently normal. <u>See</u>, *i.e.*, (R. 410 on 2/14/11reporting that Baldwin is "[p]leasant and engaged" and "reported that he is doing relatively well" with "no

9

major mood symptoms or instability"); (R. 412 on 1/19/11 Baldwin noting "that past several months have been relatively stable, with no major mood disruptions"); (R. 11/22/10 reporting that Baldwin is "generally stable, euthymic mood, denies major anxiety or depression"); (R. 418 "Pt reports generally stable mood, [without] major mood swings or problems"). Moreover, as the ALJ noted, Baldwin's treatment records indicated a GAF of 62 two months before Dr. Vassilenko completed his report. (R. 412). Consequently, I find that the ALJ did not err in concluding that Dr. Vassilenko's report was not supported by his own findings over the course of multiple examinations.

Because I find the ALJ's rejection of Dr. Vassilenko's report to be supported by substantial evidence, Baldwin's contention that "[i]f Dr. Vassilenko's opinions had been given controlling / great weight, the claimant would have met the definition of disability under Social Security Regulations" based upon the answers to the hypotheticals posed to the vocational expert which included the limitations described by Vassilenko, is unpersuasive as well. Further, Baldwin's argument that "if Dr. Vassilenko's opinions set forth in that report had been given controlling / great weight, the claimant would have met Listing 12.04 Affective Disorder under the A3 criteria as well as the C2 criteria" (Docket No. [9], p. 10) lacks merit for the same reason.

I also find that substantial evidence supports the ALJ's assessments under the Listings. Baldwin finds fault with the ALJ's determination under the "paragraph B" criteria with respect to Listing 12.04. (Docket No. 9, p. 13). Baldwin does not dispute that in order to satisfy the "B" criteria, "the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (R. 22). Significantly, Vassilenko found that Baldwin only had "marked" difficulties in maintaining concentration, persistence or pace. (R. 406). Dr. Vassilenko

10

found that Baldwin had only "moderate" restrictions of activities of daily living and difficulties in maintaining social functioning. (R. 406). Although Baldwin cites to testimony from the hearing regarding the self-inflicted scratches and cuts on his hands and feet; his primary care physician's records detailing various ailments such as conjunctivitis, folliculitis, and worms in his stool; documentation from the Staunton Clinic regarding his insomnia; and Baldwin's struggle to performing tasks, such citations do not convince me that Vassilenko's findings regarding "moderate" restrictions were erroneous. Nor do they cause me pause in holding that the ALJ's conclusions regarding his assessments under the "paragraph B" criteria of Listing 12.04 are supported by substantial evidence.

    **C.    WHETHER THE ALJ ERRED IN FORMULATING THE HYPOTHETICAL QUESTION**

Finally Baldwin urges that the ALJ erred in formulating his hypothetical question because he did not include the limitations specified by Dr. Manella Link, whose opinion the ALJ found more persuasive than Dr. Vassilenko. As previously stated, Dr. Link found that Baldwin was "moderately limited" in his ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (R. 385). Baldwin reasons that these limitations should have been included in the hypothetical posed to the vocational expert and that the ALJ's limitation to simple tasks was insufficient.

An ALJ's hypothetical to a vocational expert must reflect all of an applicant's impairments that are supported by the record. Otherwise that vocational expert's opinion cannot be considered "substantial evidence." *See Ramirez v. Barnhart*, 372 F.3d 546, 552-553 (3d Cir. 2004); *see also Corona v. Barnhart*, 431 F. Supp. 2d 506, 516 (E.D. Pa. 2006) ("the ALJ's determination that Plaintiff suffers mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining

concentration is not properly reflected in her hypothetical question to the VE."); *Warfle v. Astrue*, Civil No. 10-1255, 2011 U.S. Dist. LEXIS 150692, * 20 (M.D. Pa. May 5, 2011 (Muir, J.) ("It is incumbent on the administrative law judge to include a hypothetical question all the limitations that are supported by the records."); *Hunt v. Astrue*, Civil No. 11-1242, 2012 U.S. Dist. LEXIS 177925, * 25-26 (M.D. Pa. Dec. 17, 2012) (Munley, J.) ("[a]lthough the administrative law judge limited Hunt to unskilled, light work involving low stress, this does not adequately reflect a limitation in concentration, persistence and pace. There is no evidence in the record from a vocational expert that a moderate limitation in those areas would not impact Hunt's ability to maintain light work positions as an usher and inspector or the sedentary positions of beverage order clerk and billing clerk.); and *Stewart v. Astrue*, Civil No. 11-978, 2012 U.S. Dist. LEXIS 177257, * 23-24 (M.D. Pa. Dec. 12, 2012) (Caputo, J.) (finding that the ALJ's hypothetical to the vocational expert, which limited the claimant to unskilled work despite the fact that he had found the claimant to have moderate difficulty with concentration, persistence and pace, was erroneous.)

Had Dr. Link simply described Baldwin as "moderately limited," I would find the cases referenced above persuasive. Yet Dr. Link did more in the report than simply check a box. In the "Explanation of Findings" Dr. Link noted:

> The claimant's basic memory processes are intact. Stress exacerbates his symptoms. He has a history of impulsive behavior. Moreover, he would be able to make simple decisions. He can sustain an ordinary routine without special supervision. … The claimant is able to meet the basic demands of competitive work on a sustained basis despite the limitations resulting from his impairments.

(R. 387). Given this modification of the "moderate limitations" that Dr. Link specified in the report, substantial evidence supports the formulation of the ALJ's hypothetical that had the following nonexertional limitations: (1) limited to simple, routine, repetitive tasks involving routine work processes and settings; (2) not involving high stress (defined as high quotas or close attention to quality production standards); (3) would not be able to engage in team work

or team type activities; and (4) would be precluded from operating dangerous machinery or motor vehicles. Furthermore, although the vocational expert stated that Baldwin would not be able to perform any work if he were "off-task" 15% or more of the time, there was no evidence of record indicating that Baldwin would, in fact, be "off-task" 15% or more of the time. Consequently, I find his argument to be unpersuasive in this regard.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATH FORD BALDWIN,<br><br>    Plaintiff,<br><br> -vs-<br><br>CAROLYN W. COLVIN,[2]<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 13-203 |

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 22nd day of January, 2014, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 8) is denied and Defendant's Motion for Summary Judgment (Docket No. 10) is granted.

                                              BY THE COURT:

                                              s/ Donetta W. Ambrose
                                                Donetta W. Ambrose
                                                United States Senior District Judge

---

[2] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.